IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA, Plaintiff

vs.

ASSORTED JEWELRY VALUED IN THE AMOUNT OF $15,200, Defendant.

CA 06 477 ML

C.A. NO.

COMPLAINT FOR FORFEITURE IN REM

Plaintiff, the United States of America, acting by and through the United States Attorney for the District of Rhode Island, in a civil cause for forfeiture, alleges upon information and belief:

1. That this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355, 1356, and 1395, 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 983.

2. That on or about February 3, 2006, the defendant jewelry valued in the amount of $15,200 was seized from a vehicle in East Providence, Rhode Island, by officers of the East Providence Police Department pursuant to the arrest of Nolan Navedo and Michael Reyes on Route 195 for possession of marijuana. (See affidavit of DEA Task Force Officer Karl R. Jacobson attached hereto and made a part hereof.) The defendant assorted jewelry is further described as follows: one gold triple row Princess cut diamond ring w/27 diamonds, one half pair of 14k gold diamond cluster earring w/7 round diamonds and one loose 2.19 ct round diamond.

3. That the defendant assorted jewelry constitutes the proceeds of controlled substance exchanges as within the meaning of 21 U.S.C. 881(a)(6) in that such jewelry was purchased by Nolan Navedo and/or Michael Reyes with money that they obtained from the purchase and sale of marijuana and cocaine, controlled substances. (See affidavit of DEA Task Force Officer Karl R. Jacobson attached hereto and made a part hereof.)

4. That by reason of the foregoing, the defendant jewelry is forfeited to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff, the United States of America, prays that due process issue to enforce the forfeiture and to give notice to the interested parties to appear and show cause why forfeiture should not be decreed; that the defendant jewelry be forfeited to the United States of America and thereafter be disposed of according to law; and for such other and further relief as this court may deem just and proper.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Michael P. Iannotti

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

VERIFICATION

I, Michael P. Iannotti, being duly sworn, depose and say that I am an Assistant United States Attorney for the District of Rhode Island, that I have read the foregoing Complaint for Forfeiture in Rem, and that the contents thereof are true to the best of my knowledge, information, and belief.

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

Sworn to and subscribed before me this 26th day of October, 2006.

Notary Public

My commission expires 8/27/09.

AFFIDAVIT

I, Karl Jacobson, being duly sworn, depose and say:

1. I am a member of the East Providence Police Department and have been continuously employed in this capacity for the past 8 years. I hold the rank of Investigator. I have been assigned to the East Providence Police Narcotics Unit for approximately 4 years and to a Drug Enforcement Administration (DEA) task force comprised of federal, state and local law enforcement officers for almost 2 years. I am designated a Task Force Officer by the DEA. My duties include, but are not limited to, investigation of violations of the Uniform Controlled Substances Act. I have attended numerous schools and seminars concerning the investigation of drug offenses, including a 2-week school sponsored by the DEA.

2. I make this affidavit in support of the Complaint for Forfeiture in Rem against assorted jewelry valued in the amount of $15,200.00, seized from a vehicle (stopped while traveling West) on Route 195 in East Providence, Rhode Island on February 3, 2006, pursuant to the arrest of Nolan Navedo and Michael Reyes. The assorted jewelry is further described as follows: one gold triple row Princess cut diamond ring w/27 diamonds, one half pair of 14k gold diamond cluster earring w/7 round diamonds and one loose 2.19 ct round diamond.

3. On February 3, 2006 at approximately 02:50 a.m., Ptlm. Mark Cadoret of the East Providence Police Department stopped a white Chevrolet bearing Massachusetts Registration 91CT45 on I-195 west for speeding. As Ptlm. Cadoret approached the operator's side of the vehicle the operator identified himself as Nolan Navedo. Cadoret observed that Navedo and his passenger, who was later identified as Michael Reyes, appeared extremely nervous. Cadoret received a license from Navedo, and Reyes identified himself as Barry Tatum with a date of birth of January 5, 1982. Cadoret noticed that both individuals were wearing an

excessive amount of jewelry. Cadoret then went back towards his police vehicle to check the license status of the operator of the vehicle and to determine whether there were any outstanding warrants on the occupants. When he returned to the vehicle, Cadoret noticed that both individuals had removed the jewelry that they had been wearing. Since Reyes was not answering to the name he had given, Cadoret called for backup and removed Reyes from the vehicle. During a " pat down" search of Reyes, Cadoret discovered a loose 2.19 ct. diamond wrapped in plastic which Reyes indicated belonged to him. After Cadoret walked Reyes over to the police cruiser, Reyes fled on foot. Reyes was caught after a short foot chase and both Reyes and Navedo were arrested due to the discovery of marijuana in the vehicle and the discovery of Reyes' true name which was associated with several outstanding warrants. During a strip search, a plastic bag containing marijuana was discovered in Reyes' underwear. During a further search of the vehicle, the jewelry which had been on the persons of Reyes and Navedo, was found hidden in the vehicle. Also, when asked about the jewelry in the cell block, both subjects denied any ownership of the jewelry. Navedo was also found to have $4,236.80 in cash on his person. Navedo denied that any of the jewelry belonged to him until Cadoret told him that he had observed some of the jewelry on him. At that point, , Navedo admitted that a yellow gold diamond ring, a princess cut diamond earring, a large diamond cross, and a white gold chain belonged to him. After a further interview, and an initial denial of ownership, Reyes pointed to the diamond earrings, white gold diamond ring, and the loose 2.19 ct. diamond wrapped in plastic, described in paragraph 2 above, as belonging to him.

4. At approximately 11:30 AM, Detective Michael Petow interviewed Navedo and Reyes regarding the jewelry and cash. Petow was checking into the status of the jewelry and the possibility that it was stolen. Petow read Reyes his constitutional rights and Reyes

signed a form indicating he understood his rights. Reyes immediately denied that he was Michael Reyes and continued that story throughout the interview. He informed Petow that he had not worked for over a year and a half. Reyes stated that he purchased the jewelry from a jeweler in Chinatown for $3,500.00. A later appraisal of the jewelry showed it as being valued at $15,200. When Reyes gave the name of a jeweler, Petow followed it up and found that the name was fake. Reyes continued to lie about his identity and told. Petow how he and Navedo had won large sums of money at Foxwoods Casino and did not need to work. Reyes could not provide information to prove this claim, but stated they had been returning from Foxwoods and that was the reason for Navedo's having the money. At approximately 12:05 PM, Petow interviewed Navedo after the signing of a rights form. Navedo stated that he and Reyes had gone to the Foxy Lady in New Bedford and were returning from that location when stopped by the police, contradicting Reyes' story. Navedo stated that he had not had a job "on the books" for the last three years but occasionally worked under the table for Axle Plumbing. Petow investigated this statement and found that Navedo had not worked for Axle and that the owner of Axle Plumbing had recently been arrested by the East Providence Police and had listed himself as an unemployed plumber and that the phone number of the business was disconnected. Navedo then indicated that the cash had been won from scratch cards and he gave the locations and amounts of his winnings. For example, he stated that $1000.00 of it was won at Cumberland Farms on Rt. 18 in Fairhaven, Mass. at 10:00 P.M. the previous night. Petow contacted personnel at this store who indicated that it has a high payout of $500.00 and anything large must be collected at a lottery office and that no $500.00 winners were collected at that location over the last several days. Every story given by Navedo was proven to be a lie by Petow. When questioned about the jewelry, Navedo stated it was nothing and not worth any real value except maybe "a few

thousand". An appraisal of jewelry claimed by Navedo showed its value to be $11,525.00. A check of the criminal histories of Navedo and Reyes showed several arrests for narcotics trafficking.

5. Navedo is listed in DEA records with 2005 arrests regarding distribution of crack cocaine and a 2003 arrest for possession of crack cocaine and percocet with intent to deliver as well as carrying a dangerous weapon and also as a narcotic trafficking associate of Reyes. Reyes is listed in DEA records as a source of supply (SOS) for several cases and as having several outstanding warrants for narcotics trafficking and eluding and assaulting police officers. In April 2005, Reyes fled from agents and police leaving behind an ounce of cocaine, 10 bags of heroin, trafficking weight of marijuana, $2,456 in U.S. currency and a .380 mm handgun. Reyes is listed as a well known poly-drug trafficker in the southeastern Massachusetts area who, at the time of the East Providence arrest, had eight outstanding warrants for drug trafficking.

6. I have spoken with Special Agent Steve Viella of the New Bedford DEA office. Viella stated that Reyes is a large scale trafficker who has been on the run for approximately 3 years. DEA agents attempted to find him during that period which led to more charges after he fled and left behind narcotics. Agents also know Navedo to be an associate of Reyes. In 2005, DEA agents attempted to find Reyes on several occasions. On one occasion, Reyes fled in the Town of Middleboro, Massachusetts where he threw a half kilogram of cocaine from the vehicle and was not caught. In April 2005, agents and officers conducted surveillance at 2 Weaver in Fall River, the residence of Navedo. Reyes showed up and another chase ensued. Viella stated that agents had attempted to find Reyes over the last 3 years by tracking employment and he has not been employed. The activities of Reyes and Navedo are well known

to law enforcement. Viella stated that one of their arrests was for distribution of crack cocaine and they were together and were co-defendants. Reyes is currently incarcerated for the eight Massachusetts warrants which are all connected to narcotics trafficking.

7. I have been involved in over 200 controlled substance investigations and in numerous seizures of controlled substances including cocaine powder, crack cocaine, and heroin and have been involved in numerous searches of dwellings and buildings out of which controlled substances have been sold or stored, and in which drug traffickers have resided. I have testified concerning the manufacture, distribution and possession of controlled substances. I have received training from the DEA in the means and methods used by persons in the drug trafficking business.

8. Based upon the foregoing there is probable cause to believe that the jewelry, described in paragraph 2 above, was purchased with funds that were furnished or intended to be furnished in exchange for controlled substances, that is, cocaine and marijuana and constitutes the proceeds of the exchange of controlled substances, and that said jewelry is, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881(a) (6).

Karl R. Jacobson
Task Force Officer
Drug Enforcement Administration

Signed and sworn to before me this 26th day of October, 2006

Notary Public
My commission expires 8/27/09.